UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| DUANE ZIEMBA, : | |
|     Plaintiff, : | |
| : | |
| v. : | No. 3:11cv845 (SRU) |
| : | |
| MICHAEL LAJOIE, et al., : | |
|     Defendants. : | |

RULING ON DEFENDANTS' MOTION TO DISMISS [Doc. #26]

Plaintiff Duane Ziemba filed this action *pro se* bringing claims under 42 U.S.C. § 1983 (2000). He names as defendants Michael Lajoie, Angel Quiros, Brian K. Murphy, Stephen Faucher, Lauren Powers and Jason Cahill. Ziemba alleges that the defendants moved two violent inmates into his cell in retaliation for his lawsuits against Department of Correction employees and failed to protect him from harm. The defendants have filed a motion to dismiss the request for declaratory relief and all claims against defendants Lajoie, Murphy, Faucher and Powers. For the reasons that follow, the defendants' motion is granted in part.

I. Standard of Review

When considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 143 (2d Cir. 2003). The court considers not whether the plaintiff ultimately will prevail, but whether he has stated a claim upon which relief may be granted so that he should be entitled to offer evidence to support his claim. *See York v. Association of Bar of City*

*of New York*, 286 F.3d 122, 125 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002).

In reviewing the complaint in response to a motion to dismiss, the court applies "a 'plausibility standard,' which is guided by two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the requirement that the court accept as true the allegations in the complaint "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief. Determining whether the complaint states a plausible claim for relief is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Even under this standard, however, the court liberally construes a *pro se* complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Boykin v. KeyCorp*, 521 F.3d 202, 213-14, 216 (2d Cir. 2008).

II.   Facts

In November 2009, Ziemba was confined at Northern Correctional Institution. At that time, Ziemba was litigating three cases in federal court against correctional officials. Ziemba has since been transferred to the MacDougall-Walker Correctional Center.

In October 2009, inmate Michael Giangreco was confined at the MacDougall-Walker Correctional Center. He assaulted his cellmate with a piece of metal from his wheelchair and informed staff that he had killed his cellmate. Following the incident, inmate Giangreco told correctional staff that he intended to remain in a single cell by any means necessary including murder. Following the incident, inmate Giangreco was transferred to Northern Correctional

Institution.

On November 4, 2009, inmate Giangreco was assigned as Ziemba's cellmate. That same day, inmate Giangreco assaulted Ziemba and stated that he would murder Ziemba the first chance he had. As a result of the assault, Ziemba suffered a cracked tooth, cuts in his mouth and bruises on his face and head. Ziemba told unidentified staff members and defendant Cahill about the assault and threat and asked that inmate Giangreco be moved. Defendant Cahill refused to make any housing changes and told Ziemba they should work out their differences. Ziemba also wrote to defendants Cahill and Quiros but received no response.

On November 5, 2009, inmate Giangreco assaulted Ziemba by choking him. No action was taken and medical care was not provided. On November 6, 2009, inmate Giangreco was moved to another cell. Later that day, defendant Cahill told Ziemba that, because he filed lawsuits against correctional staff, he would "pay dearly" and that "we will just keep getting inmates to do our dirty work for us." Compl., ¶ 27. Defendant Cahill also told Ziemba that his next cellmate would be worse. Ziemba wrote letters to defendants Murphy, Quiros and Cahill. No action was taken in response to the letters.

On November 13, 2009, inmate Conte was assigned as Ziemba's cellmate. Inmate Conte suffered from brain damage, was know to be violent and had been ordered to be housed in a single cell. Inmate Conte remained as Ziemba's cellmate until November 17, 2009. During that time, inmate Conte threatened Ziemba but did not harm him. Defendant Cahill refused to move inmate Conte. On November 17, 2009, Ziemba expressed his concerns to defendant Quiros while the warden was touring the housing unit. Defendant Quiros threatened Ziemba.

III.  Discussion

Ziemba asserts five claims for relief.  In the first claim, he seeks declaratory relief in the form of "a declaration of his rights and remedies."  The second claim, is a federal claim against all of the defendants for deliberate indifference to safety and failure to protect him from harm.  The third claim is a federal claim against defendants Lajoie, Quiros, Murphy, Faucher and Powers for supervisory liability.  The fourth claim is a retaliation claim against all of the defendants.  The fifth claim encompasses state law claims for violation through retaliatory acts of his right to freely speak, write and publish his grievances; denial of medical care; assault and battery; intentional and negligent infliction of emotional distress; and negligence.

The defendants have moved to dismiss the claim for declaratory relief against all defendants and the second, third and fourth claims for relief against defendants Murphy, Lajoie, Faucher and Powers.  They also argue that any allegations of negligence contained in the second, third and fourth claims are not cognizable under section 1983 and that, to the extent that it is based on allegations of negligence, the fifth claim is barred as a matter of state law.  Finally, the defendants urge the court to decline to exercise supplemental jurisdiction over the state law claims against defendants Murphy, Lajoie, Faucher and Powers.

A.  Declaratory Relief

Ziemba seeks a declaration of his rights and remedies.  Declaratory relief is intended to enable parties to adjudicate claims before either side suffers great damages.  *See In re Combustible Equip. Assoc.*, 838 F.2d 35, 37 (2d Cir. 1988).  Declaratory relief operates prospectively; it is inappropriate for past acts because all damages already have accrued.  *See National Union Fire Ins. Co. of Pittsbugh, Pa. v. International Wire Group, Inc.*, No. 02 Civ.

4

10338, 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003). The incidents giving rise to this action occurred during a two-week period in late 2009 when Ziemba was incarcerated at a different correctional facility. The alleged violation of Ziemba's rights occurred over two years ago and will be compensated by his requested damages should he prevail in this action. Accordingly, declaratory relief is inappropriate. The defendants' motion to dismiss is granted with respect to the claim for declaratory relief.

  B.  Supervisory Liability

Defendants Acting Commissioner Murphy, District Administrator Lajoie, Deputy Warden Faucher and Deputy Warden Powers are all supervisory officials. For many years it was well settled in this circuit that there were five ways to demonstrate the personal involvement of a supervisory defendant: (1) the defendant directly participated in the alleged constitutional violation, (2) after he was informed of the violation through a report or appeal, the supervisory defendant failed to remedy the wrong, (3) the supervisory defendant created a policy or custom pursuant to which the constitutional violation occurred or permitted such a policy or custom to continue, (4) the defendant was grossly negligent in supervising the subordinates who committed the wrongful acts, or (5) the defendant was deliberately indifferent to the plaintiff's rights by failing to act on information that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). In addition, the plaintiff must demonstrate an affirmative causal link between the supervisory official's failure to act and his injury. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

The decision in *Ashcroft v. Iqbal*, 556 U.S. 662, caused a number of courts to re-examine this issue. In *Iqbal,* the Supreme Court rejected the argument that "a supervisor's mere

knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution," concluding that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." 556 U.S. at 677.

Since *Iqbal*, some districts courts within this circuit have determined that not all five of *Colon's* categories of conduct that may give rise to supervisory liability remain viable. *See, e.g., Bellamy v. Mount Vernon Hospital*, No. 07 Civ. 1801(SAS), 2009 WL 1835939 at *6 (S.D.N.Y. June 26, 2009) ("The Supreme Court's decision in *Iqbal v. Ashcroft* abrogates several of the categories of supervisory liability enumerated in *Colon v. Coughlin*. *Iqbal's* active conduct standard only imposes liability on a supervisor through section 1983 if that supervisor actively had a hand in the alleged constitutional violation. Only the first and part of the third *Colon* categories pass *Iqbal's* muster."); *Bryant v. County of Monroe*, No. 09-CV-6415-CJS, 2010 WL 4877799 at *3 (W.D.N.Y. Nov. 22, 2010) ("The Court . . . is persuaded by the analysis of . . . *Iqbal* . . . in *Bellamy* . . . ."). Other district courts restrict application of *Iqbal* to cases involving discriminatory intent. *See, e.g., Delgado v. Bezio*, No. 09 Civ. 6899(LTS), 2011 WL 1842294 at *9 (S.D.N.Y. May 9, 2011) ("'It was with intent-based constitutional claims in mind, specifically racial discrimination, that the Supreme Court rejected [in *Iqbal*] the argument that a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution.'. . . Thus, where the claim does not require a showing of discriminatory intent, the *Colon* analysis should still apply, insofar as it is 'consistent with the particular constitutional provision alleged to have been violated.'" (internal citations omitted)). The Second Circuit has not yet addressed this issue.

This court need not determine whether *Iqbal* applies in all cases or just those involving

discriminatory intent because the allegations against defendants Murphy, Lajoie, Faucher and Powers are insufficient to survive dismissal even under the *Colon* standard.

Ziemba alleges no facts regarding defendant Lajoie. The only factual allegation regarding defendant Murphy is that Ziemba wrote him a letter after inmate Giangreco was placed in Ziemba's cell. The receipt of a complaint from an inmate, without more, does not establish personal involvement of a supervisory official. *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (two letters to commissioner, one assigned to subordinate for response and one seeking status of request which was responded to by commissioner, do not demonstrate the requisite personal involvement of commissioner); *Marrero v. Kirkpatrick*, 659 F. Supp. 2d 422, 427 (W.D.N.Y. 2009) (allegation that prisoner wrote to supervisory officials and failed to receive satisfactory response was insufficient to demonstrate personal involvement).

Ziemba has attached to his complaint a hearing notice showing that inmate Giangreco was violent and alleges that inmate Giangreco told defendants Faucher and Powers that he would murder his next cellmate. Although this shows that some or all of these defendants knew that inmate Giangreco was violent, Ziemba alleges no facts supporting his conclusion that any of them ordered inmates Giangreco and Conte to be housed with Ziemba or was aware that the cell assignments had been made. Thus, Ziemba has alleged no facts demonstrating the personal involvement of any of the four defendants in his second, third and fourth claims for relief.

In opposition to the motion to dismiss, Ziemba argues that the complaint is replete with factual allegations against these defendants. Ziemba is mistaken. What he considers facts actually are conclusions and statements reciting the *Colon* categories of conduct. Neither is sufficient to survive a motion to dismiss. *See Harris*, 572 F.3d at 72 (when reviewing a motion

7

to dismiss, court need not accept as true legal conclusions or conclusory statements reciting elements of cause of action).

Unlike the prison officials in the cases Ziemba cites in his memorandum, there are no facts alleged showing that these defendants were aware that Ziemba was in a danger from inmate Giangreco.  For example, in one case, two inmates assaulted a third inmate.  The supervisory official knew that one of two inmates had been assaulted by gang members in retaliation for his participation in the assault and that the gang was angry with the second inmate.  The court concluded that these facts were sufficient to establish supervisory liability after the second inmate was assaulted by gang members.  *See Woods v. Lecureux*, 110 F.3d 1215, 1223-24 (6th Cir. 1997).   In another case, the correctional official had spoken with the inmate about his safety concerns and the inmate was attacked on three separate occasions without correctional staff taking action.  *See Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 617, 621 (2d Cir. 1996).  Here, there is no pattern of conduct against Ziemba by either inmate and only one occasion of assault.  Thus, these case do not support Ziemba's claims.

Ziemba also argues that the supervisory defendants are liable because they failed to create adequate policies to ensure that inmate Giangreco was not placed in his cell when they should have known the likely result of requiring inmate Giangreco to have a cellmate.  Ziemba does not, however, allege any facts to suggest that an appropriate classification policy was not in place. Equally likely is the possibility that the inmates were placed in Ziemba's cell despite an appropriate policy.  To survive a motion to dismiss, Ziemba must "provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculation level.'"  *ATSI Communications, Inc, v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.

8

2007) (quoting *Twombly*, 550 U.S. at 555). Without any supporting factual allegations, Ziemba's assumptions do not rise to the required level.

Ziemba has not alleged any facts demonstrating a plausible claim against defendants Murphy, Lajoie, Faucher and Powers. Thus, the defendants' motion to dismiss is granted with respect to the allegations against those defendants in claims for relief two, three and four.

        C.        <u>Negligence Allegations in Claims for Relief Two and Four</u>

The defendants argue that any allegations of negligence by any defendant in claims for relief two and four are not cognizable under section 1983. Ziemba alleges in his federal claims that all defendants were "personally negligent" in supervising and training subordinates. *See* Doc. #1, ¶¶ 51d, 60e. Negligence on the part of a prison official will not establish a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 332–33 (1986). Accordingly, the defendants' motion to dismiss is granted with respect to any federal law claims based on negligence.

        D.        <u>State Law Claims</u>

The defendants argue that, to the extent the fifth claim is based upon allegations of negligence, it is barred under Conn. Gen. Stat. section 4-165, which provides state officers and employees with personal immunity. That section provides:

> No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment. Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter.

Conn. Gen. Stat. § 4-165. Thus, "state employees may not be held personally liable for their negligent actions performed within the scope of their employment." *Hamilton v. Lajoie*, 660 F.

Supp. 2d 261, 265 (D. Conn. 2009) (quoting *Miller v. Egan*, 265 Conn. 301, 319 (2003)). Accordingly, the defendants' motion to dismiss is granted with respect to any state law claims based on negligence.

Finally, the defendants ask the court to decline to exercise supplemental jurisdiction over the state law claims against defendants Murphy, Lajoie, Faucher and Powers. The defendants do not address the merits of any remaining state law claims.

Where all federal claims have been dismissed, the district court may decline to exercise supplemental jurisdiction over pendent state law claims. *See* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction over state law claims where all federal claims have been dismissed); *see also Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases supporting proposition that district court should decline to exercise supplemental jurisdiction where all federal claims have been dismissed).

Here, although the federal claims against defendants Murphy, Lajoie, Faucher and Powers have been dismissed, the federal claims against defendants Quiros and Cahill remain pending. Ziemba's state and federal claims are based on the same operative facts, the assignment of inmates Giangreco and Conte as his cellmates. Thus, in the interest of judicial economy, the state and federal claims should be tried together. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726-27 (1966) (federal court should retain jurisdiction of state law claims under theories of judicial economy and fairness to litigants where state and federal claims are closely linked and state claims do not substantially predominate); *Advance Relocation & Storage Co., Inc. v. Local 814, Int'l Bhd. of Teamsters, AFL-CIO*, No. CIV.A. 03CV4475DGTJM, 2005 WL 665119, at *11 (E.D.N.Y. Mar. 22, 2005) (retaining supplemental jurisdiction over state

claims against one defendant against whom federal RICO claims had been dismissed because state claims and RICO claims derived from same facts and RICO claims remained pending against other defendants). The defendants' motion to dismiss is denied with respect to the state law claims.

IV. <u>Conclusion</u>

The defendants' motion to dismiss [**Doc. #26**] is **GRANTED** in part. The request for declaratory relief, all federal claims against defendants Murphy, Lajoie, Faucher and Powers, and any federal claims based on negligence against defendants Quiros and Cahill are dismissed. The case will proceed on the remaining federal claims against defendants Quiros and Cahill and the state law claims, other than those based on negligence, against all defendants.

It is so ordered.

Dated at Bridgeport, Connecticut this 24th day of September 2012.

<u>/s/ Stefan R. Underhill</u>  
Stefan R. Underhill  
United States District Judge
